1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SOCIALAPPS, LLC,**

    Plaintiff,

    vs.

**ZYNGA, INC.,**

    Defendant.

Case No.: 4:11-CV-04910 YGR

**ORDER RE ZYNGA'S MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiff SocialApps LLC ("SA") brings the instant action for copyright infringement,

violation of the California Uniform Trade Secrets Act ("CUTSA"), and various contract-based

common law claims against Defendant Zynga Inc. ("Zynga"). The parties are presently before the

Court on Zynga's Motion to Dismiss the second, fourth, fifth, and sixth claims in Plaintiff's First

Amended Complaint.

Having read and considered the papers submitted and the pleadings in this action, the Court

hereby GRANTS IN PART the motion as to the second claim (violation of CUTSA), and DENIES

Zynga's motion to dismiss as to the fourth, fifth, and sixth claims (breach of implied contract,

breach of confidence and breach of the implied covenant of good faith and fair dealing,

respectively). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the

Court rules on the instant motion without oral argument.

BACKGROUND

SA's First Amended Complaint ("FAC") filed September 15, 2011, alleges that SA developed the first farming social network game to be accessed through Facebook.  The game was publicly released on Facebook in November 2008 as "myFarm."

In May 2009, Zynga approached SA about acquiring the intellectual property rights and other information about myFarm.  The parties entered into a letter agreement on May 19, 2009.[1] Pursuant to that agreement, SA provided information to Zynga for "due diligence" purposes.

SA alleges that Zynga violated the express terms of the agreement, as well as the implied understandings the parties had reached in connection with the agreement, by making use of the myFarm confidential source code, processes, and other information revealed pursuant to the letter agreement.  SA goes on to allege that Zynga thereafter used the confidential source code and other information it acquired from SA to create its own game, "FarmVille," without SA's permission and without compensating SA.  Zynga's FarmVille game was released on Facebook on or about June 19, 2009.  SA alleges that Zynga later used that same information to create other similar games (FrontierVille, CityVille, FishVille), again without SA's consent or compensation.

LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199-1200 (9th Cir.2003).  Review is limited to the contents of the complaint and documents specifically referenced therein. *Allarcom Pay*

---

[1]     The Court has considered the copy of the "letter agreement" attached as Exhibit A to the Declaration of Rachel Herrick Kassabian filed October 24, 2011, in connection with this motion.  The Court may do so without converting the motion to one for summary judgment since the letter agreement is referenced in the pleading and the parties do not dispute the authenticity of the copy attached to the declaration in support of the motion to dismiss, even though plaintiff has not attached or explicitly alleged the contents of agreement in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

United States District Court
Northern District of California

*Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995); *Branch v. Tunnell* 14 F.3d 449, 454 (9th Cir. 1994).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Specific facts are unnecessary -- the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)). Any ambiguity must be resolved in plaintiff's favor.  *International Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2nd Cir. 1995).

A motion under Rule 12(b)(6) may not be used to challenge only certain allegations within a claim, but rather such a challenge must be made by way of a motion to strike under Rule 12(f). *Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D. Ariz. 2009).  However, the Court has the discretion to construe a motion to dismiss as a motion to strike pursuant to 12(f) when appropriate. *Id*.

## ANALYSIS

Zynga moves to dismiss SA's second claim (violation of CUTSA), fourth claim (breach of implied contract), fifth claim (breach of confidence) and sixth claim (breach of the implied covenant of good faith and fair dealing).

### 1.    CUTSA VIOLATION (SECOND CLAIM)

Zynga argues that SA's second claim for misappropriation of trade secrets in violation of CUTSA should be dismissed because some of the information allegedly misappropriated was, at

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the time, publicly available to the world on the Internet.  SA alleges that Zynga misappropriated

two types of information: (1) proprietary source code and (2) images and features for myFarm.  SA

defines, in paragraph 35 of the FAC, "Trade Secrets" as including "its proprietary source code,

images for myFarm and its various features."  FAC at ¶35.

As SA has alleged, the myFarm game was publicly released in November 2008, and

therefore the images and features were visible to the public several months before the May 2009

letter agreement or June 2009 release of FarmVille.  Publicly available information, by definition,

cannot be protected as a trade secret.  Cal. Civ. Code §3426.1(d); *DVD Copy Control Assoc. v.*

*Bunner*, 116 Cal.App.4th 241, 251-53 (2004).

SA argues that it has properly alleged that its proprietary source code was not publicly

known, was maintained as confidential, and meets the definition of a trade secret.  In its opposition,

SA makes no argument that the images and features are themselves trade secrets.  On reply, Zynga

concedes that it is not seeking to dismiss the claim insofar as it is based upon misappropriation of

proprietary source code, but only as to the images and features allegation.  (See Reply filed

November 14, 2011, at 2:18-19.)

As it is addressed only to a portion of the allegations in the claim, the Court exercises its

discretion to consider this a motion to strike under Rule 12(f) and STRIKES the following

allegations from FAC paragraph 35: "images for myFarm and its various features."  Plaintiff SA is

GRANTED LEAVE TO AMEND to allege more specifically which parts, if any, of the "images

and various features" of myFarm it contends are trade secret information.

2.      BREACH OF IMPLIED CONTRACT (FOURTH CLAIM)

Zynga argues that SA's fourth claim for breach of implied contract fails because SA alleged

a breach of express contract claim embracing the same subject matter.  The letter agreement

4

included terms requiring the parties to keep each other's company information confidential.  The

express contract claim alleges that Zynga breached the letter agreement by "developing, releasing,

maintaining and/or offering for sale features on social network games using Plaintiff's myFarm

concepts and/or game features without compensating or crediting Plaintiff."  The breach of implied

contract repeats the same allegations.

Unlike the express and implied contracts at issue in *Tomlinson*, cited by Zynga, the

allegations here are not at odds with one another.  *Cf. Tomlinson v. Qualcomm, Inc.* 97 Cal.App.4th

934, 945 (2002) (express employment agreement was at-will, making an implied agreement to the

contrary inconsistent and non-actionable).  SA relies on the same facts to support two different

theories of recovery.  While the allegations of the implied contract claim rely on the same

allegations as the express contract claim, SA is entitled to plead different theories of recovery in the

alternative.  *See Philips Medical Capital, LLC v. Medical Insights Diagnostics Ctr., Inc.*, 471

F.Supp.2d 1035, 1047 (2007) (while a party cannot ultimately recover based on an implied contract

where there exists a valid express contract covering the same subject matter, parties may plead the

theories in the alternative).

3.      BREACH OF CONFIDENCE CLAIM (FIFTH CLAIM)

A.      Mutual Exclusivity

As with the breach of implied contract claim, Zynga argues that the fifth claim for breach of

confidence based upon an implied agreement simply repeats the express contract allegations

concerning breach of the letter agreement's confidentiality provisions, and it should be dismissed

for that reason.  A claim for breach of confidence requires that SA plead the existence of a

confidential relationship and Zynga's voluntary assumption thereof.  *See Faris v. Engberg*, 97

Cal.App.3d 309, 321 (1979).  The cause of action is not limited to fiduciary relationships, nor to the

5

existence of a contract.  *Faris, supra*, 97 Cal.App.3d at 321.  The principle applies to one who

receives information in a confidential relation. . . who is under a duty not to disclose or use the

information, regardless of whether the confidential information is protected as a trade secret.  *Id.*

To the extent that the claim is coterminous with a claim for express breach of a nondisclosure

agreement, the two claims would be mutually exclusive.  *See Berkla v. Corel Corporation*, 302

F.3d 909, 918 (9th Cir. 2002).  However, and in contrast to the procedural posture in *Berkla*, SA

may offer different theories of recovery based on the same allegations at the pleading stage.  Thus,

like the fourth cause of action based upon an implied agreement, the Court finds that this claim can

be pleaded in the alternative to the express contract and CUTSA claims.  *See Philips Medical,*

*supra,* 471 F.Supp.2d at 1047.

B.      Preemption

Zynga argues that SA's fifth claim should be dismissed for the additional reason that it is

preempted by CUTSA.  As noted by Zynga, CUTSA preempts all non-contractual remedies for

misappropriation of trade secrets.  Cal. Civ. Code §3426.7(b)(2); *K.C. Multimedia Inc. v. Bank of*

*America Tech. & Operations, Inc.*, 171 Cal.App.4th 939, 957 (2009).  Zynga argues that the breach

of confidence claim is based upon the same allegations as SA's CUTSA claim and that the claim is

therefore preempted by the comprehensive structure of CUTSA.

First, the Court notes that the allegations of the breach of confidence claim appear to be

distinct from the allegations in connection with the CUTSA claim.  SA's breach of confidence

claim, as alleged, incorporates all the allegations of the claims that precede it.  However, it only

specifically asserts as its basis SA's disclosure of "concepts and/or game features" to Zynga. (FAC

at ¶56-61.)  In other words, it does not specifically allege that the breach of confidence claim is

founded on use of "Trade Secrets" as defined in paragraph 35 of the FAC.  On their face, the

United States District Court
Northern District of California

1    allegations regarding breach of confidence in disclosure of "concepts and/or game features" do not

2    include the proprietary source code information, nor are they required to. *See Faris, supra*, 97

3    Cal.App.3d at 321.

4        Moreover, to the extent that the allegation of "concepts and/or game features" overlaps with

5    any matters asserted to be trade secret information, plaintiff may plead for relief in the alternative.

6    While CUTSA might preempt any relief with respect to information that is a protectable trade

7    secret, SA may still be entitled to recover on a breach of confidence theory for any non-trade secret

8

9    information.

10       4.        BREACH OF IMPLIED COVENANT CLAIM (SIXTH CLAIM)

11       Zynga also argues that SA's claim for breach of the implied covenant of good faith and fair

12   dealing is superfluous and duplicative of SA's express contract claim and therefore should be

13   dismissed. In connection with this claim, SA alleges that Zynga never intended to meet its

14   responsibilities under the express and implied agreements between the parties, and that Zynga

15   deceived SA into believing it would not use the "ruse of conducting 'due diligence' to access

16

17   Plaintiff's source code in order to steal Plaintiff's concepts and/or game features." (FAC at ¶68.)

18

19       The covenant of good faith and fair dealing, implied by law in every contract, exists to

20   prevent one contracting party from unfairly frustrating the other party's right to receive the benefits

21   of the agreement. *Guz v Bechtel National Inc.*, 24 Cal.4th 317, 349 (2000) *citing Waller v. Truck

22   Ins. Exch.* 11 Cal.4th 1, 36 (1995). "The covenant is implied as a supplement to the express

23   contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the

24

25   other party's rights to the benefits of the agreement." *Waller, supra,* 11 Cal.4th at 36. "Breach of

26   the covenant of good faith and fair dealing gives rise to a contract action ... or, in limited contexts, a

27   tort action with the tort measure of compensatory damages and the right to recover punitive

28

United States District Court
Northern District of California

1  damages." *Durell v. Sharp Healthcare* 183 Cal.App.4th 1350, 1369 (2010) *citing* 1 Witkin,

2  *Summary of Cal. Law* (10th ed.2005) Contracts, § 800, p. 894.

3          The allegations here are sufficient to allege conduct beyond a mere breach of the terms of

4  the agreement which would support a claim for tort damages.  The complaint alleges that Zynga

5  used the agreement to obtain information for its own use and without compensation to SA, which

6

7  frustrated the purpose of the agreement, *i.e.* provision of information to Zynga for the purpose of

8  deciding whether to purchase the myFarm game information from SA.

9                                          CONCLUSION

10         For the foregoing reasons, Zynga's motion to dismiss SA's second claim for breach of the

11
   CUTSA is construed as a motion to strike and is GRANTED IN PART as to the allegations in
12
   paragraph 35 reading: "images for myFarm and its various features."
13

14         Plaintiff SA is GRANTED LEAVE TO AMEND to allege more particularly the trade secret

15  material stricken by the Court from the second claim for relief.  Any amended complaint must be

16  filed and served no later than 14 days after the date of this order.  Any response must be filed and

17
   served within 14 days thereafter, or if no amended complaint is filed, within 21 days of the date of
18
   this order.
19

20         The motion to dismiss the fourth, fifth and sixth claims is DENIED.

21
   IT IS SO ORDERED.
22

23
   Dated: February 6, 2012
24
                                                        _____
25                                                      **YVONNE GONZALEZ ROGERS**
                                                        **UNITED STATES DISTRICT COURT JUDGE**
26

27

28

8