GIRARDI | KEESE
THOMAS V. GIRARDI, SBN 36603
tgirardi@girardikeese.com
GRAHAM B. LIPPSMITH, SBN 221984
glippsmith@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone:  (213) 977-0211
Facsimile:   (213) 481-1554

MILORD & ASSOCIATES, P.C.
MILORD A. KESHISHIAN, SBN 197835
milord@milordlaw.com
2049 Century Park East, Suite 3850
Los Angeles, CA 90067
Telephone:  (310) 226-7878
Facsimile:   (310) 226-7879

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIALAPPS, LLC, d/b/a take(5)social and playSocial, a California company,<br><br>Plaintiff,<br><br>v.<br><br>ZYNGA, INC., a California corporation; ZYNGA GAME NETWORK, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO. 4:11-CV-04910 YGR**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>COUNTS:<br><br>1.  COPYRIGHT INFRINGEMENT;<br>2.  VIOLATIONS OF CALIFORNIA UNIFORM TRADE SECRETS ACT (CAL. CIV. CODE § 3426 *ET SEQ.*);<br>3.  BREACH OF WRITTEN CONTRACT;<br>4.  BREACH OF IMPLIED-IN-FACT CONTRACT;<br>5.  BREACH OF CONFIDENCE; AND<br>6.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>7.  UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL:

Pursuant to the Court's February 6, 2012 Order granting in part and denying in part the motion to dismiss portions of the First Amended Complaint [Dkt. 36], Plaintiff hereby submits the following Second Amended Complaint:

## SECOND AMENDED COMPLAINT FOR DAMAGES

### JURISDICTION AND VENUE

1. These causes of action arise under the provisions of the Copyright Act (17 U.S.C. §§ 101, 501), the law of the State of California and the common law.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a) and 15 U.S.C. §1125. This Court has subject matter jurisdiction over the state law causes of action under 28 U.S.C. §1367(a) because these are claims that are so related to claims within the original jurisdiction of this Court under the copyright and unfair competition laws of the United States that they form part of the same case or controversy.

2. Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) because the events giving rise to this action occurred in this district, namely Defendants have, among other acts, marketed and sold in this district products that infringe Plaintiff's copyrights, and because the Defendants' actions have resulted in Copyright Act violations and unfair competition throughout the State of California, including in this venue.

### THE PARTIES

3. Plaintiff SocialApps, LLC d/b/a playSocial and take(5)social ("Plaintiff") is and was at all times relevant herein a California company and a citizen of California in Los Angeles County.  Plaintiff's primary business is developing, posting and maintaining online social network games for sale.  Plaintiff owns all rights to the myFarm game, has been assigned all of Michael Yager and DesignerMichael, LLC's rights therein and owns playSocial and its assets.

4.      Defendants Zynga, Inc. and Zynga Game Network, Inc.[1] (jointly, "Zynga") are corporations with their headquarters located in San Francisco, California.  Zynga also has locations in Los Angeles, California and Los Gatos, California.  Zynga is and was at all times herein a direct competitor of Plaintiff because Zynga's primary business is and was at all times herein developing, posting and maintaining online social network games for sale. Zynga markets and sells its social network game services throughout the entire United States, including throughout all of California.

5.      The true names and capacities of Defendants Does 1-10 are unknown to Plaintiff, and Plaintiff will seek leave of Court to amend this complaint to allege such names and capacities as soon as they are ascertained.

6.      Whenever Plaintiff refers to any act, deed, or conduct of "Defendants," said references mean that Zynga and DOES 1-10 engaged in the acts, deeds or conduct by and through one or more of its officers, directors, agents, employees or representatives who were actively engaged in the management, direction, control or transaction of Defendants Zynga and DOES 1-10's ordinary business affairs.

7.      Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants, including without limitation the Doe Defendants, was the agent, affiliate, officer, director, manager, principal, alter-ego and/or employee of the other Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment and actively participated in, or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and all of the violations of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

---

[1] Zynga has represented that "'Zynga Game Network Inc.' is not an extant corporation, but rather is Zynga, Inc.'s former corporate name."  Dkt. #9, p. 2 n.1.  However, since discovery has not yet commenced, Plaintiff names Zynga Game Network Inc. again in an abundance of caution since the party to the written agreement was Zynga Game Network Inc.

## GENERAL ALLEGATIONS

8.      Prior to November 2008, Plaintiff invested substantial time, resources and funds to develop "myFarm," the first farming social network game that allowed players to create their own virtual farms, raise virtual produce and animals and harvest their virtual farm goods to trade with or sell to other players.  Seeking to capitalize on the meteoric rise of social network gaming platforms accessed through Facebook, Plaintiff created and first publicly released myFarm on Facebook in or about November 2008.

9.      Among other unique features, to enhance the myFarm playing experience, Plaintiff created a unique system in which players have the option to use "myFarm Credits." Players acquire myFarm Credits by either (1) purchasing them from Plaintiff's clearinghouse partner or (2) partaking in listed surveys and offers by advertising partners. With the myFarm Credits, players buy virtual myFarm Cash to develop their farms, activate other game features and support the game.  Plaintiff's myFarm Credits and myFarm Cash features are the means by which myFarm generates its revenues.

10.      In or about May 2009, Defendants approached Plaintiff in an attempt to acquire the intellectual property rights, confidential information and source code for myFarm.  On May 19, 2009, Defendants and Plaintiff entered into a Letter Agreement and Term Sheet providing key business terms and for confidentiality concerning both the transaction and any company information—including proprietary source code and confidential information—that Plaintiff provided to Defendants in what Defendants called their "due diligence."  Under both the express terms of the Letter Agreement and implied through Defendants and Plaintiff's words and conduct and industry norms, Plaintiff and Defendants had a bilateral expectation that if Defendants used Plaintiff's myFarm concept and distinct features, Defendants would compensate and credit Plaintiff for such use.

11.      Using the ruse of "due diligence," Defendants required Plaintiff to produce its confidential source code and other proprietary and confidential information for myFarm, and Plaintiff provided Defendants with the source code and other proprietary and

confidential information Zynga requested under a reasonable belief that Defendants were in fact performing their due diligence and that Defendants would abide by the confidentiality terms binding them.  By providing this confidential source code and other proprietary and confidential information, Plaintiff revealed to Defendants numerous aspects of myFarm's functionality, including its processes for using myFarm Credits, myFarm's key feature for generating revenue.

12.   During Zynga's "due diligence" ruse, Plaintiff also revealed to Defendants numerous confidential functions, publicly unavailable artwork, functions, and game-play features that were intended for future publication of Plaintiff's subsequent versions of the game.  The then-unreleased aspects of myFarm that Plaintiff shared with Zynga in the "due diligence" process included, but were not limited to, the following categories of functions, artwork and features: neighbor interfaces, badge interfaces, game play items, icons artwork, badge icons and pop-ups.

13.   Shortly after Plaintiff provided Defendants with the confidential source code and other proprietary and confidential information that Defendants requested, Defendants ceased communicating with Plaintiff.  Although Plaintiff was not aware of it at the time Zynga took Plaintiff's confidential source code and other proprietary and confidential information, Defendants used their ruse of due diligence to access Plaintiff's confidential source code and other information.  Plaintiff is informed and believes that, shortly thereafter, Defendants intentionally and deliberately used Plaintiff's confidential source code and other proprietary and confidential information to clone myFarm's key features and future key features as part of a campaign to wrongfully divert revenues from myFarm and generate additional revenues.

14.   Defendants never compensated or credited Plaintiff for using myFarm's confidential source code and other proprietary and confidential information.  Defendants also never obtained Plaintiff's permission to use the source code and other proprietary and confidential information.  Despite this, Plaintiff is informed and believes Defendants used Plaintiff's source code and other proprietary and confidential information when it first

released "FarmVille" on or about June 19, 2009.  Until Defendants' June 19, 2009 release of FarmVille, Plaintiff neither knew nor had reason to know that Defendants used its myFarm confidential source code and other proprietary and confidential information without compensating Plaintiff or Plaintiff's permission.

15.    On or about June 13, 2011, Plaintiff applied to register myFarm source code with the United States Copyright Office, Service Request No. 1-621918421, which has now received Registration No. TX0007407186.

16.    Among other items, the registered work includes (a) source code, (b) layout and arrangement, (c) visual presentation, (d) sequence and flow, (e) scoring system, (f) artwork and (g) myFarm's overall look.  myFarm has at least twenty distinct command terms.  Players must use these terms in order to advance through the game.  Players use at least the following twenty distinct command terms to increase their myFarm Credits and/or myFarm Cash to improve their ranking by building a bigger and/or higher yield farms:

- **Store:**  Players purchase items from the store to use on their farm.  The store is divided into separate departments. Each department contains specific items that the player may purchase and use on their farm.  These departments are: Specialty, Seeds, Animals, Trees, Buildings, Vehicles, Decorations, Eggs, Flowers, Fisheries, Fences, Gnomes, Topiaries.
- **Plant Crops:**  Players purchase various seeds from the store to plant on their farm.  Once planted crops will grow based on a growth rate assigned to each crop type.  Crops available for planting include pumpkins, beets, cotton, sunflower, strawberries, tomatoes, rice, corn, potatoes and wheat.
- **Harvest Crops:**  When a crop is fully grown the player can harvest that crop to earn myFarm Cash.
- **Dead Crops:**  If a player does not harvest a crop within the harvest period the crop will die and the player must discard the crop and replant it.

- **Plant Trees:**  Players purchase various trees from the store to plant on their farm.  Once planted trees will grow based on a growth rate assigned to each tree type.
- **Harvest Trees:**  When a tree is fully grown the player can harvest that tree to earn myFarm Cash.
- **Plow Fields:**  Players must plow field tiles before they can plant crops on that field.
- **Grow Animals:**  Players purchase various animals from the store to place on their farm.  Once placed the animal will grow based on a growth rate for each animal type.
- **Sell Animals:**  Players can sell fully grown animals to earn myFarm Cash.
- **Gifts:**  Players can send animals and trees to their friends as gifts and can receive animals and trees from their friends as gifts.  Gifts received can be retrieved from a gifts window in the game and placed on the player's farm.
- **Place Buildings:**  Players purchase various buildings from the store to place on their farm.  Some buildings are decorative while others provide an advantage to the player when placed on their farm.
- **Multi-Function Tools:**  Players purchase various multi-function tools from the store to use on their farm.  Multi-function tools allow the player to perform certain actions in the game more easily such as plowing multiple fields at a time and harvesting multiple crops and trees at a time.
- **Grow and Send Flowers As Gifts:**  Players can purchase various flowers from the store, plant and grow them.  Once fully grown players can send those flowers to a friend as a gift.
- **Visit Friend's Farm:**  Players can visit and view a friend's farm.

SECOND AMENDED COMPLAINT

- **Snapshots:**  Players can create a photo snapshot of their farm that they can post to the social network and share with their friends.
- **Zoom In/Out:**    Players can zoom the viewable area of their farm in and out to give the player either a larger or more detailed view of the farm area.
- **Fullscreen View:**  Players can change to a fullscreen view of the game to maximize the viewable area of their farm.
- **Tile Based Isometric View:**  The game uses a bird's eye pseudo 3-D view such that the tile arrangements to give the perception of a 3-D virtual world.
- **myFarm Cash:**  Players earn and spend myFarm cash to advance in the game.  Certain items from the store can be purchased for myFarm Cash.
- **myFarm Credits:**  Players can purchase and spend myFarm credits on premium items not available for myFarm Cash .

17.    Plaintiff is informed and believes that Defendants used and continue to use each of the above command terms and confidential features from Plaintiff's myFarm game to create, maintain and generate substantial revenues from Defendants' FarmVille game.

18.    Plaintiff is also informed and believes that Defendants used and continues to use Plaintiff's confidential source code and other proprietary and confidential information to create, maintain, and generate substantial revenues from Defendants' other popular virtual world games including but not limited to FrontierVille, CityVille, and FishVille.  ("Other Virtual World Games").

# FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101, *ET SEQ.*)
### (Against All Defendants)

19.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

20.     Plaintiff owns the copyright to the myFarm source code identified above.

21.     Defendants have deliberately and intentionally infringed on Plaintiff's copyright without authorization, in direct violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.  On information and belief, such infringing conduct includes, but is not limited to, Defendants' copying of myFarm's (a) source code, (b) layout and arrangement, (c) visual presentation, (d) sequence and flow, (e) scoring system, (f) artwork and (g) myFarm's overall look in the creation and maintenance of FarmVille and the Other Virtual World Games.

22.     Defendants' infringing conduct includes, **but is not limited to**, the misconduct set forth in the following paragraphs.

23.     <u>Defendants Copied the Layout and Arrangement of Main Menu</u>. Defendants' main menus are creatively structured around at least fifteen distinct command terms: (1) Gifts, (2) Plow Fields, (3) Plant Crops, (4) Harvest Crops, (5) Grow Animals, (6) Sell Animals, (7) Place Buildings, (8) Sell Buildings, (9) Multi-Function Tools, (10) Plant Trees, (11) Harvest Trees, (12) Store, (13) Zoom In/Out, (14) Fullscreen View, and (15) Snapshots.  Defendants copied at least all fifteen of these command terms and arranged the command terms, along with a similar description of each command term, in a format nearly identical to that of myFarm.

24.     <u>Defendants Copied the Individual Screen Displays and Content for Each Command Term</u>.  As an example, Defendants' screen display and content for the FarmVille "Market" is nearly identical to myFarm's "Store."  An essential part of both myFarm and FarmVille is the buying and gifting of supplies.  Both screen displays provide users with a selection of "Departments" to shop in and each "Department" contains items for purchase along with the pricing of each.  In both games, users can choose to buy for themselves or "gift" items to a friend. As demonstrated in the table and screenshots below, the departments and items for sale in each game are nearly identical:

| **myFarm Store** | **FarmVille Market** |
|---|---|

 

| **myFarm Store** | **FarmVille Market** |
|---|---|
| **Department: "Specialty"** | **Department: "Specials"** |
| Items for Purchase:        Get Gnomes | Items for Purchase:        Detective Gnome |
|                                     Ducks |                                     Duck Pond |
| **Department: "Seeds"** | **Department: "Seeds & Trees"** |
| Items for Purchase:        Cotton | Items for Purchase:        Cotton |
|                                     Strawberries |                                     Strawberries |
|                                     Wheat |                                     Wheat |
|                                     Tomatoes |                                     Tomatoes |
|                                     Sunflower |                                     Sunflowers |
|                                     Corn |                                     Corn |
|                                     Pumpkins |                                     Pumpkins |
|                                     Rice |                                     Rice |
|                                     Potatoes |                                     Potatoes |
| **Department: "Animals"** | **Department: "Animals"** |
| Items for Purchase:        Pig | Items for Purchase:        Pot Belly Pig |
|                                     Pink Pig |                                     Purple Boar |
|                                     WhiteBrown Pig |                                     Saddleback Pig |

10

SECOND AMENDED COMPLAINT

| | |
|---|---|
| Goat | English Goat |
| Black Horse | Hackney Horse |
| Brown Horse | Autumn Horse |
| Black Stallion | Forest Horse |
| Brown Cow | Hereford Cow |
| Cow | Cow |
| Black Cow | Belted Cow |
| Rhode Island | Rhode Island Red |
| Barred Chicken | Black Chicken |
| Turkey | Wild Turkey |

| **Department: "Trees"** | | **Department: "Seeds & Trees"** | |
|---|---|---|---|
| Items for Purchase: | Apple Tree | Items for Purchase: | Apple Tree |
| | Peach Tree | | Peach Tree |
| | Pear Tree | | Asian Pear |
| | Coconut Tree | | Coconut Tree |
| | Banana Tree | | Banana Tree |
| | Orange Tree | | Orange Tree |
| | Mango Tree | | Mango Tree |
| | Plum Tree | | Plum Tree |

| **Department: "Buildings"** | | **Department: "Buildings"** | |
|---|---|---|---|
| Items for Purchase: | Chicken Coop | Items for Purchase: | Chicken Coop |
| | Woodshed | | Workshed |
| | White House | | Farm House |
| | Yellow House | | Log Cabin |
| | Stone House | | Estate |
| | Brick House | | Villa |
| | Mansion | | Mansion |
| | Storage Shed | | Tool Shed |

SECOND AMENDED COMPLAINT

| Barn | | Pink Barn | |
|---|---|---|---|
| **Department: "Vehicles"** | | **Department: "Farm Aides"** | |
| Items for Purchase: | Red Tractor | Items for Purchase: | Tractor |
| | Yellow Combine | | Combine Chassis |
| | Red Combine | | Hod Rod Combine |
| | Seeder | | Seeder |
| | ATV | | Harvester |
| **Department: "Decorations"** | | **Department: "Decorations"** | |
| Items for Purchase: | Pond | Items for Purchase: | Duck Pond |
| | Summer Lake | | Misty Lake |
| | Haystack | | Hay Bale |
| | Classy Joe Scarecrow | | Black Scarecrow |
| | Patches Scarecrow | | Blue Scarecrow |
| | Tater Sack Scarecrow | | Scarecrow |
| | Red Windmill | | Wind Turbine |
| **Department: "Flowers"** | | **Department: "Seeds & Trees"** | |
| Items for Purchase: | Rose | Items for Purchase: | Majestic Roses |
| | Tulip | | Red Tulips |
| | Lily | | Lilies |
| | Poppy | | Purple Poppies |
| | Daisy | | Orange Daisies |
| **Department: "Fences"** | | **Department: "Decorations"** | |
| Items for Purchase: | Stone Wall | Items for Purchase: | Stone Wall |
| | Brown Fence | | Country Fence |
| | White Picket | | Whitewash Fence |
| **Department: "Topiaries"** | | **Department: "Decorations"** | |
| Items for Purchase: | Pig Topiary | Items for Purchase: | Pig Topiary |
| | Cow Topiary | | Cow Topiary |

SECOND AMENDED COMPLAINT

| Sheep Topiary | Sheep Topiary |
| Horse Topiary | Horse Topiary |

The similarities exemplified by the above table are indicative of the similarities of many command terms used by both myFarm and FarmVille.  The screenshots provided below further show that FarmVille is an obvious imitation of myFarm.  These examples are not all inclusive of the functions copied by Defendant:

- The FarmVille fullscreen view function infringes the myFarm's fullscreen view function:

myFarm                                    FarmVille



- The FarmVille plowed fields 3D bird's eye view and arrangement of tiles infringes myFarm's plowed fields 3D bird's eye view and arrangement:

myFarm                                    FarmVille

 

- The FarmVille Gift/Gift Box window displaying the gifts a player receives infringes the myFarm Gift/Gift Box window:

myFarm                              FarmVille

- Select Friends Function. The arrangement and layout of these pages are very similar.

myFarm                              FarmVille



- The FarmVille take snapshot function infringes the myFarm take snapshot function:

14

<u>myFarm</u>                                    <u>FarmVille</u>

 

- The FarmVille zoom functionality infringes the myFarm zoom functionality:

<u>myFarm</u>                                    <u>FarmVille</u>



- The FarmVille send gifts arrangement and layout infringes the myFarm send gifts arrangement and layout:

myFarm                                        FarmVille

SECOND AMENDED COMPLAINT





17

SECOND AMENDED COMPLAINT

- Farmville infringes the general game economics of myFarm.

myFarm FarmVille



| myFarm Economics | | | | FarmVille Economics | | | |
|---|---|---|---|---|---|---|---|
| **Crop** | **Cost** | **Harvest** | **Produces** | **Crop** | **Cost** | **Harvest** | **Produces** |
| Strawberries | $0.52 | 1 Day | $190 | Strawberries | 10 Coins | 4 Hours | 35 Coins |
| Corn | $1.27 | 2 Days | $185 | Corn | 150 Coins | 3 Days | 380 Coins |
| Tomatoes | $1.23 | 1 Day | $165 | Tomatoes | 100 Coins | 8 Hours | 173 Coins |
| Rice | $0.45 | 2 Days | $290 | Rice | 45 Coins | 12 Hours | 96 Coins |
| Potatoes | $1.31 | 3 Days | $220 | Potatoes | 135 Coins | 3 Days | 345 Coins |
| Wheat | $0.84 | 3 Days | $240 | Wheat | 13 Coins | 12 Hours | 61 Coins |

25.    Defendants Copied the Sequence and Flow of myFarm.  Players in both games are confined to the same parameters based on time, credits, cash, experience and size of players' farm. Players must efficiently use their skill and calculation to build their farms, purchase features and virtual goods, acquire property, grow virtual farm goods and trade or gift with other players.  myFarm's sequence and flow is copied because players of both games are required to strategically balance the following criteria: (1) growth rate of individual crops, (2) item yield from harvesting individual crops, (3) growth rate of individual trees, (4) item yield from harvesting individual trees, (5) utilize multi-function

tools to increase planting/harvesting rates, and (6) send gift items to friends in order to entice friends to reciprocate and receive gift items in exchange.

26.   <u>Defendants Copied the Credit/Cash System in myFarm</u>.  The Credit/Cash system in FarmVille and Zynga's Other Virtual World Games is substantially similar to the Credit/Cash system in myFarm in the following ways: (1) players spend myFarm Cash on trees, animals, crops, buildings, and multi-function tools to advance their farm, (2) players earn myFarm Cash by harvesting crops and trees and by selling buildings and animals, (3) players receive myFarm Credits by purchasing them through a payment processing partner or participating in offers provided by 3rd party partners, (4) players spend myFarm Credits to obtain premium items for use in myFarm.

27.   <u>Defendants Copied The Overall Plot, Theme, Mood, Setting, Pace, Characters, and Sequence of myFarm</u>. As demonstrated above, FarmVille copied the physical and operational aspects of myFarm by copying the layout and arrangement of myFarm, the visual presentation of each screen display within the game, the sequence and flow of the game, the Credit/Cash system used by the game, and the overall look and feel of the game. Furthermore, Defendants copied the underlying premise behind the game, which is to build your virtual farm, generate credits and cash by raising and selling virtual farm goods, and trading with and/or gifting to other users on the social networking website or by purchasing credits from Plaintiff's clearinghouse.  Therefore, Defendants copied the same plot, theme, mood, setting, pace, characters, and sequence of events from myFarm.

28.   <u>Defendants Used the Command Terms and Confidential Features of myFarm to Create its Other Virtual World Games</u>. Plaintiff is informed and believes that Defendants copied myFarm's (a) source code, (b) layout and arrangement, (c) visual presentation, (d) sequence and flow, (e) scoring system, and (f) overall look in order to create Other Virtual World Games.  Below are example functions that Defendant's copied from myFarm and used in Other Virtual World Games.  These examples are not all inclusive of Defendants' infringing misconduct.

- The CityVille fullscreen view and functionality infringe the myFarm fullscreen view and functionality:

myFarm           CityVille

- The FishVille snapshot interface infringes the myFarm snapshot interface:

myFarm          FishVille

SECOND AMENDED COMPLAINT

- The FrontierVille send gifts feature infringes the myFarm send gifts feature:

<u>myFarm</u>                                      <u>FrontierVille</u>

                    

- The FrontierVille store/market infringes the myFarm store/market:

| **myFarm Store** | | **FrontierVille Market** | |
|---|---|---|---|
| **Department: "Seeds"** | | **Department: "Crops"** | |
| Items for Purchase: | Pumpkins | Items for Purchase: | Pumpkins |
| | Tomatoes | | Tomatoes |
| | Potatoes | | Potatoes |
| | Corn | | Corn |
| | Wheat | | Wheat |
| **Department: "Animals"** | | **Department: "Animals"** | |
| Items for Purchase: | Chicken | Items for Purchase: | Chicken |
| | Goat | | Goat |
| | Pig | | Pig |
| | Cow | | Cow |

| Department: "Trees" | | Department: "Seeds & Trees" | |
|---|---|---|---|
| Items for Purchase: | Apple Tree | Items for Purchase: | Apple Tree |
| | Cherry Tree | | Cherry Tree |
| | Peach Tree | | Peach Tree |
| | Pear Tree | | Pear Tree |
| Department: "Buildings" | | Department: "Buildings" | |
| Items for Purchase: | Barn | Items for Purchase: | Barn |
| Department: "Fences" | | Department: "Decorations" | |
| Items for Purchase: | Brown Fence | Items for Purchase: | Brown Fence |
| | Barbed Wire | | Wire Fence |
| | Stone Wall | | Stone Border |
| Department: "Decorations" | | Department: "Decorations" | |
| Items for Purchase: | Hay Stack | Items for Purchase: | Hay Bale |

29.     Each infringement by Defendants constitutes a separate and distinct act of infringement against myFarm.

30.     Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of Plaintiff. At no time did Plaintiff authorize Defendants to reproduce, adapt, or distribute myFarm.

31.     Each player that is wrongfully diverted to FarmVille and Zynga's Other Virtual World Games constitutes an entire network of social connections and related revenues.

32.     As a direct and proximate result of Defendants' infringement of Plaintiff's rights, Plaintiff has sustained, and will continue to sustain, substantial injury, loss, and damages in an amount exceeding $100,000.00 and as will be proven at trial.

33.     Plaintiff is entitled to a permanent injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further acts of copyright infringement.

34.     Plaintiff is further entitled to recover from Defendants the gains, profits and

advantages Defendants have obtained as a result of their acts of copyright infringement. Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of their acts of copyright infringement, but Plaintiff is informed and believes, and on that basis alleges, that Defendants obtained such gains, profits and advantages in an amount vastly exceeding $500,000.00.

## SECOND CAUSE OF ACTION—VIOLATIONS OF CALIFORNIA UNIFORM TRADE SECRETS ACT (CAL. CIV. CODE §§ 3426, *ET SEQ.*)
### (Against All Defendants)

35.     Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

36.     As a result of its substantial time, resources and funds to develop myFarm, Plaintiff was and is the sole owner and/or possessor of its proprietary source code, as well as myFarm's various functions, images and features.

37.     During Zynga's "due diligence" ruse, Plaintiff provided Defendants with its proprietary source code, as well as publicly unavailable artwork, functions, and game-play features that were intended for future publication of Plaintiff's subsequent versions of the game ("Trade Secrets").

38.     None of Plaintiff's Trade Secrets were publicly available at the time that Defendants misappropriated the Trade Secrets.

39.     Plaintiff's Trade Secrets had economic value in that they contained information not generally known within the trade and were the culmination of many years of research and development.  Plaintiff made reasonable efforts to ensure that its Trade Secrets remained a secret by disclosing this information only to those who required this information to perform their jobs and by requiring those who accessed this information to refrain from disclosing or disseminating this information.

40.     Plaintiff's confidential Trade Secrets merit legal protection from Defendants' misappropriation in that Defendants used the ruse of conducting "due diligence" in

negotiations for purchasing Plaintiff's technology and Plaintiff is informed and believes that Defendant used Plaintiff's Trade Secrets to develop and release FarmVille and its Other Virtual Games, steering users away from Plaintiff's game and generate its own revenues from Plaintiff's technology.

41.     Defendants misappropriated Plaintiff's confidential Trade Secrets.  Plaintiff is informed and believes that Defendants used Plaintiff's confidential Trade Secrets to develop and release FarmVille and its Other Virtual Games, steering users away from Plaintiff's game and generate its own revenues from Plaintiff's technology.  Defendants did this for their own benefit in violation of the confidentiality provisions of at least the Letter Agreement.  Defendants then developed and released products that directly competed and continue to compete with Plaintiff's myFarm product, causing Plaintiff to lose valuable revenues and its existing and potential business, goodwill and reputation derived therefrom.

42.     As a proximate result of Defendants' misconduct, Plaintiff's business, profits, goodwill and reputation have been damaged in an amount to be determined at trial.

43.     Defendants conduct as described herein was despicable and was committed maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff and with a willful and conscious disregard of the rights of Plaintiff.  Defendants subjected Plaintiff to cruel and unjust hardship, and via intentional misrepresentation, deceit, or concealment of material facts, Defendants intended to deprive Plaintiff of property or legal rights all to the detriment of Plaintiff and to the financial benefit of Defendants.

44.     Defendants' conduct is particularly reprehensible because Plaintiff is informed and believes it was part of a repeated corporate practice and not an isolated occurrence. Plaintiff is informed and believes and thereon alleges that Defendants have substantially increased their profits as a result.

## THIRD CAUSE OF ACTION—BREACH OF WRITTEN CONTRACT
### (Against All Defendants)

45.     Plaintiff repeats, alleges and incorporates by reference the allegations

contained in this Complaint as though fully set forth herein.

46.     On or about May 9, 2009, Plaintiff and Defendants entered into a written agreement with term sheet whereby Plaintiff conditioned an offer to convey concepts and/or game features for its myFarm game in exchange for Defendants' obligation to pay and credit Plaintiff for the concepts if Defendants were to use those concepts and/or game features in social network games.  Defendants also agreed not to disclose, divulge or exploit those concepts and/or game features without Plaintiff's authorization and/or payment and credit to Plaintiff for use of the concepts and/or game features in social network games.

47.     Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of its written agreement with the Defendants.

48.     Defendants breached and continue to breach their written agreement with Plaintiff by developing, releasing, maintaining and/or offering for sale features on social network games using Plaintiff's myFarm concepts and/or game features without compensating or crediting Plaintiff.  Defendants also breached and continue to breach their written agreement with Plaintiff by using Plaintiff's myFarm concepts and/or game features without Plaintiff's authorization or permission.

49.     As a direct and proximate result of Defendants' material breaches of the written agreement, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION—BREACH OF IMPLIED-IN-FACT CONTRACT**
**(Against All Defendants)**

50.     Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

51.     Beginning in at least May 2009, Plaintiff and Defendants entered into an implied-in-fact contract, as shown by their course of conduct, whereby Plaintiff conditioned an offer to convey concepts and/or game features for its myFarm game in exchange for

Defendants' obligation to pay and credit Plaintiff for the concepts and/or game features if Defendants were to use those concepts and/or game features in social network games.

52.     By their course of conduct, Defendants voluntarily accepted Plaintiff's disclosures, knowing that using Plaintiff's concepts for and/or game features of myFarm in social network games carried with it an obligation to, at a minimum, compensate and credit Plaintiff for their use.

53.     Plaintiff conveyed and Defendants accepted these concepts and/or game features pursuant to the standard custom and practice in the entertainment industry of providing creative concepts to Defendants in exchange for compensation and credit to Plaintiff if Defendant were to use those concepts and/or game features.

54.     Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of its agreement with the Defendants.

55.     Defendants' actions and conduct implied and led Plaintiff to reasonably believe that it would be fully compensated and credited for Plaintiff's concepts for and/or game features of myFarm in social network games should Defendants choose to develop, release, maintain and/or offer for sale such social network games.

56.     Defendants breached and continue to breach their implied contract with Plaintiff by developing, releasing, maintaining and/or offering for sale features on social network games using Plaintiff's myFarm concepts and/or game features without compensating or crediting Plaintiff.

57.     As a direct and proximate result of Defendants' material breaches of the implied-in-fact contract, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION—BREACH OF CONFIDENCE
### (Against All Defendants)

58.     Plaintiff repeats, alleges and incorporates by reference the allegations

contained in this Complaint as though fully set forth herein.

59.     Beginning in May 2009, Plaintiff and Defendants also entered into a confidential relationship, as shown by their course of conduct, whereby Plaintiff conditioned an offer to convey concepts and/or game features for its myFarm game in exchange for Defendants' obligation not to disclose, divulge or exploit those concepts and/or game features without Plaintiff's authorization and/or payment and credit to Plaintiff for use of the concepts and/or game features in social network games.

60.     By their course of conduct, Defendants voluntarily accepted Plaintiff's disclosures, knowing that using Plaintiff's concepts for and/or game features of myFarm in social network games without Plaintiff's authorization carried with it an obligation to, at a minimum, compensate and credit Plaintiff for their use.

61.     Plaintiff conveyed and Defendants accepted these concepts and/or game features pursuant to the standard custom and practice in the entertainment industry of providing creative concepts to Defendants in exchange for maintaining their confidentiality, not disclosing, divulging or exploiting those concepts and/or game features without Plaintiff's authorization and/or compensation and credit to Plaintiff if Defendant were to use those concepts and/or game features.

62.     Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of its agreement with the Defendants.

63.     Defendants' actions and conduct implied and led Plaintiff to reasonably believe that Defendants would not disclose, divulge or exploit those concepts and/or game features without Plaintiff's authorization and/or compensation and credit to Plaintiff if Defendant were to develop, release, maintain and/or offer for sale such social network games.

64.     Defendants breached and continue to breach their confidence with Plaintiff by developing, releasing, maintaining and/or offering for sale features on social network games using Plaintiff's myFarm concepts and/or game features without Plaintiff's authorization and without compensating or crediting Plaintiff.

65.     As a direct and proximate result of Defendants' material breaches of confidence, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

66.     Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

67.     Every contract carries with it the implied covenant of good faith and fair dealing.  Having relied on that covenant, Plaintiff entered into each of the written and implied agreements with Defendants.

68.     Defendants had a duty to act fairly and in good faith with respect to meeting their responsibilities to Plaintiff under each of the agreements.

69.     Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of its agreements with the Defendants.

70.     Defendants breached and continue to breach their agreements with Plaintiff by developing, releasing, maintaining and/or offering for sale features on social network games using Plaintiff's myFarm concepts and/or game features without compensating or crediting Plaintiff.  Defendants also breached and continue to breach their agreements with Plaintiff by using Plaintiff's myFarm concepts and/or game features without Plaintiff's authorization or permission.

71.     Plaintiff is informed and believes that from the outset of the negotiations with Plaintiff, Defendants never intended to meet their responsibilities to Plaintiff under each of the agreements, including, but not limited to compensating and/or crediting Plaintiff for its concepts and/or game features and refraining from disclosing, divulging or exploiting Plaintiff's concepts and/or game features without Plaintiff's authorization and without

compensating or crediting Plaintiff.  However, Defendants deceived Plaintiff into believing that they would abide by the terms of the agreement and, at a minimum, not use the ruse of conducting "due diligence" to access Plaintiff's source code in order to steal Plaintiff's concepts and/or game features.

72.   As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

73.   Defendants conduct as described herein was despicable and was committed maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff and with a willful and conscious disregard of the rights of Plaintiff.  Defendants subjected Plaintiff to cruel and unjust hardship, and via intentional misrepresentation, deceit, or concealment of material facts, Defendants intended to deprive Plaintiff of property or legal rights all to the detriment of Plaintiff and to the financial benefit of Defendants.

74.   Defendants' conduct is particularly reprehensible because Plaintiff is informed and believes it was part of a repeated corporate practice and not an isolated occurrence. Plaintiff is informed and believes and thereon alleges that Defendants have substantially increased their profits as a result.

## SEVENTH CAUSE OF ACTION—UNJUST ENRICHMENT
### (Against All Defendants)

75.   Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

76.   Defendants have been unjustly enriched and continue to be unjustly enriched by their misconduct set forth herein.

77.   The amounts by which Defendants have been unjustly enriched should be awarded to Plaintiff.

78.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment and relief as follows:

1.      For Defendants' profits to be proven at trial;

2.      For Plaintiff's lost profits to be proven at trial;

3.      For general damages to be proven at trial;

4.      For special damages to be proven at trial;

5.      For punitive damages, exemplary damages and/or enhancement of damages to be proven at trial;

6.      For injunctive relief;

7.      For declaratory relief;

8.      For statutory damages;

9.      For an accounting to be proven at trial;

10.     For prejudgment interest;

11.     For attorney's fees;

12.     For the costs of this action; and

13.     For any further legal and equitable relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated:          February 17, 2012                    GIRARDI | KEESE
                                                     MILORD & ASSOCIATES, P.C.

                                             By:     _____/s/ Graham B. LippSmith_____
                                                     THOMAS V. GIRARDI
                                                     GRAHAM B. LIPPSMITH

                                                     MILORD A. KESHISHIAN
                                                     Attorneys for Plaintiff

SECOND AMENDED COMPLAINT