GIRARDI | KEESE
LAWYERS

1126 Wilshire Boulevard
Los Angeles, California 90017-1904

TEL: (213) 977-0211
FAX: (213)481-1554
www.girardikeese.com

QUINN EMANUEL
TRIAL LAWYERS

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139

TEL: (650) 801-5000
FAX: (650) 801-5100
www.quinnemauel.com

September 13, 2012

**DOCUMENT SUBMITTED UNDER SEAL**

The Honorable Donna M. Ryu
United States Magistrate Judge
United States District Court for the
Northern District of California
Oakland Courthouse
1301 Clay Street
Oakland, CA 94612

Re: *SocialApps, LLC v. Zynga Inc.*, No. 4:11-cv-04910-YGR: Zynga's Motion to CompelFurther Responses to Interrogatories and Requests for Admission

Dear Judge Ryu:

Pursuant to the Court's June 18, 2012 Notice of Reference and Order Re Discovery Procedures ("Discovery Procedures Order"), Defendant Zynga Inc. ("Zynga") seeks an order requiring Plaintiff SocialApps, LLC ("SocialApps") to remedy its discovery, which Zynga claims is deficient as detailed below. SocialApps filed suit against Zynga in June 2011, claiming Zynga's popular social media video game, *FarmVille*, infringes SocialApps' copyright for its game, *myFarm*, and that Zynga misappropriated related alleged trade secrets. (Dkt. No. 37, SocialApps' Second Amended Complaint ("SAC")). Zynga served discovery four months ago—on April 27, 2012—that Zynga argues SocialApps still has not sufficiently responded to. Zynga claims that SocialApps also has repeatedly failed to identify its trade secrets with the requisite specificity, as ordered by Judge Gonzales-Rogers. *See* Zynga's Motion to Enforce, filed concurrently; 6/14/12 Order (Dkt. No. 66). This letter addresses SocialApps' written responses to Zynga's Requests for Admissions and to Zynga's Second Set of Special interrogatories.

Zynga sent SocialApps meet and confer letters and emails delineating these deficiencies on July 2, 11 and 31, and August 1 and 3, 2012 (among other dates). The parties also met and conferred by phone on July 9, August 6 and September 6, 2012 but have been unable to resolve their dispute.

## I. SOCIALAPPS' SUPPLEMENTAL INTERROGATORY RESPONSES.

Zynga's Position and Proposal

Despite several rounds of meet and confer, SocialApps either has refused to supplement, or has inadequately supplemented, several of its interrogatory responses, as set forth below.

**Interrogatory No. 8:** SocialApps' Third Supplemental Response to Interrogatory No. 8 remains deficient. This Interrogatory seeks, "[f]or each of DEFENDANT'S PRODUCTS which YOU contend infringes YOUR copyright in *myFarm*, identify[ication of] all facts upon which you base YOUR contention, including the name of the PRODUCT, and, if different versions exist, the version number or release date thereof, the specific features or elements of the PRODUCT which YOU contend are infringing, and all PERSONS with knowledge of YOUR contention." (Exhibit A at 3).

First, SocialApps' response pastes in its (deficient) Section 2019.210 trade secret disclosures, which is insufficient because Interrogatory No. 8 concerns copyright infringement, not trade secret misappropriation. (*Id.* at 5-10). Indeed, many of the listed items are not even copyrightable (as they are unprotectable ideas or methods of operation, for example), and thus cannot form the basis of SocialApps' copyright claim. Moreover, the listed items are alleged features of ***SocialApps' myFarm*** game, ***not*** Zynga's *FarmVille* game, as the request calls for.

SocialApps then claims that "all versions of Defendants' *FarmVille* games infringed its source code copyright for *myFarm*," and "all versions of the games Defendants spun off of *FarmVille*, including *FrontierVille* (now known as *The Pioneer Trail*), *ChefVille*, *CityVille*, *CityVille Holidaytown*, *CityVille Hometown*, *FarmVille 2*, *FarmVille Mobile*, *FishVille*, *ForestVille*, *PetVille*, *The Ville*, *YoVille*, and *CastleVille* games (collectively, "Ville Spinoff Games"), infringed its source code copyright for *myFarm* ***to the extent*** these games are reskins of and derived from Defendants' *FarmVille* games and incorporate many of the same infringing aspects that are found in Defendants' *FarmVille* games." (emphasis added). (*Id.* at 4).

SocialApps' laundry list response of other Zynga games is deficient because it does not even confirm that they infringe—rather, SocialApps only includes them as infringing "***to the extent*** these game are reskins" of and "incorporate many of the same infringing aspects that are found in Defendants' *FarmVille* games." (*Id.*) (emphasis added). This hedging language is insufficient; either SocialApps contends these games display infringing features, or they do not.

SocialApps should be ordered to amend its response to delete this hedging language, and to specify whether it contends that these games do, or do not, contain allegedly infringing features or elements (and if so, which ones).

SocialApps' response also is defective because it fails to list ***any*** allegedly infringing "features or elements" for six of the accused "spinoff" games – *ChefVille* ,*CityVille Holidaytown*, *CityVille Hometown*, *ForestVille*, *PetVille* or *YoVille*. This failure is inexcusable given that all of these Zynga games are publically available, and thus SocialApps knows which features or elements it claims are infringing—or at least it should know, assuming SocialApps had a good faith basis for bringing its lawsuit. Zynga is entitled to know the factual basis of SocialApps' allegations. *See, e.g.*, *Kelly v. Crate & Barrel Inc.*, 2008 WL 2233568, at *1, 3 (E.D. Cal. 2008) (copyright infringement plaintiff compelled to respond to an interrogatory seeking identification of the claims, bases and methods of

calculation of its claims to actual damages); *see also Phillip M. Adams & Assoc., LLC v. Dell Inc.*, 2006 WL 2666408, at *4 (D. Utah, Sept. 15, 2006) (granting motion to compel a response to interrogatories seeking information on alleged infringement of the plaintiff's patents). SocialApps should be ordered to amend its response to identify which specific features or elements, if any, of *ChefVille ,CityVille Holidaytown*, *CityVille Hometown*, *ForestVille*, *PetVille* or *YoVille* that it contends are infringing.

**<u>Interrogatory No. 9</u>:** SocialApps' Third Supplemental Response to Interrogatory No. 9 remains deficient. Interrogatory No. 9 asks, "with respect to YOUR contention that DEFENDANT 'misappropriated Plaintiffs confidential Trade Secrets,'[] identify all the facts upon which YOU base YOUR contention, including all PERSONS with knowledge of YOUR contention." (*Id.* at 13).

SocialApps' response merely pastes in its Section 2019.210 disclosures which, as described in Zynga's concurrently-filed Motion to Enforce, fail to identify its trade secrets with reasonable particularity. (*Id.* at 15-19). SocialApps then makes the conclusory statement that "Defendants without permission misappropriated each of the proprietary items set forth [above].]" (*Id*. at 20).

It utterly fails to identify any corresponding feature in *FarmVille* that allegedly reflects the misappropriation. SocialApps should be ordered to amend its response to identify those *Farmville* features which allegedly reflect its misappropriation claims. Indeed, SocialApps' claim that it cannot respond adequately to this interrogatory because Zynga has not produced documents is a red herring. As explained in detail in the concurrently-filed Motion to Enforce, SocialApps is precluded from taking discovery from Zynga relating to its trade secrets claims because SocialApps' trade secret disclosures are so deficient.

SocialApps also uses the same deficient hedging language that it does in response to Interrogatory No. 8, claiming that "all versions of the games Defendants spun off of *FarmVille*, including *FrontierVille* (now known as *The Pioneer Trail*), *ChefVille*, *CityVille*, *CityVille Holidaytown*, *CityVille Hometown*, *FarmVille 2*, *FarmVille Mobile*, *FishVille*, *ForestVille*, *PetVille*, *The Ville*, *YoVille*, and *CastleVille* games (collectively, "Ville Spinoff Games"), misappropriated Plaintiff's trade secrets for *myFarm* ***to the extent*** these games are reskins of and derived from Defendants' *FarmVille* games and incorporate the same misappropriated aspects that are found in Defendants' *FarmVille* games" (Emphasis added). (*Id.* at 14). Again, this hedging language should be deleted on amendment – the spinoff games either have features reflecting the alleged misappropriation, or they do not.

And finally, SocialApps purports to list misappropriated features of five of the alleged spinoff games – *Pioneer Trail, CityVille, the Ville, CastleVille and FishVille* – but it merely lists *myFarm* features, not features of those Zynga games. (*Id.* At 20-23). As to the other eight alleged spinoff games, SocialApps does not even bother to list alleged features of *myFarm* that it contends were misappropriated, let alone the corresponding features in these eight games that allegedly reflect the misappropriation. (*Id*.) SocialApps should be ordered to amend its response to include this information.

**<u>Interrogatory No. 11</u>:** SocialApps' Second Supplemental Response to Interrogatory No. 11 also is deficient. This Interrogatory asks SocialApps to describe in "[d]etail all damages (whether lost profits, lost revenues, lost customers, lost payments of royalties or any other) . . . including the

manner in which YOU calculate such damages, any efforts YOU made to mitigate those damages, and the identity of all PERSONS knowledgeable about those damages." (*Id.* at 23).

This interrogatory plainly seeks relevant information, yet SocialApps has provided only cursory and incomplete information. For instance, SocialApps claims it was damaged in:

[redacted]
- Losing "promotional efforts" for another game called *myGolfcourse* (but does not identify those efforts);
- Seeing a decrease in *myFarm*'s online users (it provides some numbers regarding monthly average users, or "MAUs", but no dates corresponding to those MAUs);
- Seeing a "significant" decline in revenue and profits (which it again fails to quantify, referencing only some advertising revenues it ***earned*** but none that it claims to have ***lost***); and
[redacted]

SocialApps should be compelled to supplement this interrogatory with all of the above information, which plainly is within its possession and does not depend on access to Zynga's documents. *See Gaeta v. Perrigo Pharm. Co.*, 2007 WL 3343043, at *7 (N.D. Cal, November 9, 2007) (plaintiff compelled to respond to interrogatory regarding damages to the extent it is aware of such damages).

SocialApps has served three rounds of interrogatory responses and thus had three opportunities to voluntarily cure the deficiencies in its responses—but it has failed to do so. Zynga proposes that SocialApps' deficient interrogatory responses be stricken and that it be ordered to provide a complete and verified response to each interrogatory.

<u>SocialApps' Response and Proposal</u>

SocialApps has supplemented responses to Interrogatories Nos. 8, 9, and 11. With respect to each of these interrogatories, SocialApps has adequately responded. Since Zynga has refused to respond to any of Plaintiff SocialApps' discovery to date, the parties remain in the very preliminary phases of discovery. Despite the limited information available to SocialApps by virtue of the absolute lack of discovery responses SocialApps has received from Zynga, SocialApps has made its best efforts to fully respond to all written discovery and engage in productive and meaningful meet and confer conferences with counsel. SocialApps is more than willing to provide additional data upon receiving vital information that SocialApps has requested and Zynga has refused to provide—i.e., the source code for FarmVille. To the extent Zynga claims the response is insufficient because it references SocialApps' Section 2019.210 disclosures which, as Zynga claims, fails to identify SocialApps' trade secrets with reasonable particularity, SocialApps disagrees with this position and incorporates its response to the Section 2019.210 disclosures in the parties' concurrently-filed joint letter.

SocialApps, in its response to Interrogatory No. 8, has already provided the information requested in Interrogatory No. 9 to the extent that SocialApps specifically identifies copyrightable elements of its source code which have been misappropriated by Zynga in Zynga's Ville spin-off games. Further,

SocialApps has set forth that the games are reskins of Zynga's FarmVille game; thus, the corresponding features are sufficiently and particularly identified in the response to Interrogatory No. 8. For example, in response to Interrogatory No. 8, SocialApps identifies no less than 28 categories for each of Zynga's spin-off games with specific references to portions of SocialApps' source code that are copyrighted and infringed by Zynga's spin-off games as set forth below. It is uncertain how much more precision can be applied toward this identification, especially without the benefit of viewing Zynga's source code or responses to SocialApps' discovery propounded to Zynga. SocialApps' specific identification is made as follows in its responses to Interrogatories Nos. 8 and 9:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Finally, both responses to Interrogatories Nos. 8 and 9 set forth in great detail the facts upon which SocialApps contends that Zynga misappropriated SocialApps' confidential trade secrets.

It is clear that SocialApps' responses are not boilerplate, have been made—and supplemented—in good faith, and represent SocialApps' best efforts to properly respond to the discovery at issue. SocialApps has adequately responded with a chronology of the parties' interactions and specific and detailed elements of the source code which were misappropriated (in addition to other features and functionalities of myFarm).

SocialApps has further amended its response to Interrogatory No. 11 to include specific revenue figures and estimated losses following counsel's meet and confer. Again, the early phase of discovery has resulted in Zynga propounding numerous sets of written discovery upon SocialApps without SocialApps' ability to receive any written responses to its discovery. The information requested in Interrogatory No. 11, valuation of SocialApps' lost profits, will necessarily involve an analysis of Zynga's profits on its infringing game, FarmVille. Since Zynga has thus far refused to

provide its own user and financial information, SocialApps is only in a position to provide its best estimates and calculations based on data available to SocialApps.

## II. SOCIALAPPS' RESPONSES TO ZYNGA'S REQUESTS FOR ADMISSION.

Zynga's Position and Proposal

SocialApps likewise provides inadequate supplemental responses to Zynga's Requests for Admission served in April. These requests ask for relevant admissions such as whether *myFarm* contains certain copyrightable material and subject matter, whether *myFarm* was the first online farming game, admissions regarding its trade secrets, etc. In many instances, SocialApps' responses fail to address the Request posed. Instead, they interpose additional language and thereby are rendered non-responsive. Moreover, many, if not all, of SocialApps' responses contain improper extraneous information accompanying its denials. On August 11, SocialApps responded to Zynga's August 3 Letter by refusing to supplement its responses to nearly all of the Requests for Admission.

SocialApps clearly is not meeting Federal Rule of Civil Procedure 36(a)(4)'s requirement that the answer, if not admitted, specifically deny or state in detail why it cannot truthfully be admitted or denied. FED. R. CIV. PRO. 36(a)(4); *see also Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992) ("A response to a request for admission is inadequate when … a responding party … makes an evasive denial (i.e., one that does not specifically deny the matter) …").

"Responses to requests for admission are insufficient when they include statements unrelated to the matter requested. *See Harris v. Oil Reclaiming Co., Ltd.*, 190 F.R.D. 674, 677 (D. Kan. 1999) (finding that responses containing non-responsive statements were insufficient under Rule 36 and ordering amendment of the responses to excise the non-responsive statements. Nonspecific, evasive or ambiguous responses that do not "specifically deny the matter" are improper and must be amended or deemed admitted. *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981).

**Request No. 1:** This Request seeks an admission "that *myFarm* does not contain only material wholly original with YOU and copyrightable subject matter under the laws of the United States." (*Id.* at 32). Yet SocialApps' response does not clearly admit or deny the request. Rather, it states that it "denies that *myFarm* does not contain copyrightable subject matter or wholly original material with Plaintiff." SocialApps' supplemental response continues to omit crucial language of Zynga's request that asks for an admission that *myFarm* does not contain "*only* material wholly original with YOU." (*Id.*).

**Requests Nos. 2-3:** Likewise, a series of SocialApps' responses attempts to re-fashion Zynga's Requests related to whether *myFarm* was the "first online farming game" that had certain features. (*Id.* at 33). SocialApps adds extraneous information to its denials that *myFarm* was "first online farming social game," "online social network game," "online social networking farming game," etc. (*E.g.*, *id.* at 33-34). SocialApps' denials must "fairly respond to the substance of the matter" and this extraneous information it includes after its denials is not a response to the request but rather an attempt to modify it. FED. R. CIV. PROC. 36(a)(4).

**<u>Requests Nos. 5</u>:** SocialApps similarly impermissibly "retooled" Zynga's Request regarding whether SocialApps was in fact the "first online social gaming company to use a system in which players have the option to use in-game credits", which it reworded in its responses as the "first online social gaming company to use a system in which players have the option to use in-game credits for a farming game and to allow users to convert cash to credits." (*Id.* at 34-35).

**<u>Requests Nos. 8-10</u>:** SocialApps also did not provide adequate responses to Zynga's requests for admission that it did not "show, demonstrate or provide *myFarm* source code" to several individuals associated with Zynga, when it responded that it "has made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable Plaintiff to admit or deny." (*Id.* at 36-38). Plaintiff knows what it showed to whom, and its failure to supplement its response is unjustifiable. SocialApps claims it cannot admit or deny the request because other persons at Zynga could have received the information shown in the due diligence process without SocialApps' knowledge. Zynga's request does not seek information regarding persons with whom ***Zynga*** allegedly shared this information—rather the request seeks information regarding those persons with whom ***SocialApps*** knowingly shared or provided information. This information is squarely within SocialApps' possession.

Zynga proposes that the Court grant its motion to compel on this basis, and order SocialApps to provide answers that are responsive to the Request posed and which remove any extraneous discussion not directly responsive to the Request.

<u>SocialApps' Response and Proposal</u>

When responding to a request for admission, a party must admit, deny, or state in detail why the request cannot truthfully be admitted or denied. Federal Rule of Civil Procedure 36(a)(4). Zynga's contentions with respect to SocialApps' responses ignore the fact that SocialApps must provide a basis for its denial where necessary. Indeed, SocialApps has admitted, denied, or provided a basis for denial in compliance with Rule 36(a)(4).

For example, SocialApps cannot possess information about whether individuals other than those who were identified in its responses to Requests Nos. 8-10 were present during the Webex presentation. As SocialApps has explained, it is entirely possible that other individuals at Zynga participated in the meeting unbeknownst to SocialApps. As such, SocialApps cannot admit those responses without further detailing the basis for the denial. While Zynga claims SocialApps has "retooled" the requests, SocialApps has actually complied with Rule 36(a)(4)'s requirement to state in detail why the request cannot be admitted.

## <u>Conclusion</u>

Zynga respectfully requests that the Court grant its motion to compel and order SocialApps to supplement the above-referenced discovery responses within seven days of the Court's Order.

SocialApps respectfully requests that the Court decline to compel any further responses in light of SocialApps' sufficient responses.

* * *

Respectfully submitted,

Thomas V. Girardi
GIRARDI | KEESE

Respectfully submitted,

Claude M. Stern
QUINN EMANUEL URQUHART & SULLIVAN LLP